■ In the Matter of CITY OF NEW YORK, Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Appellants, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. [819 NYS2d 110]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Connor, J.), entered February 28, 2005 in Albany County, which

granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Public Service Commission approving the proposed rate structure of respondent Consolidated Edison Company of New York, Inc.

In a related proceeding previously decided by this Court (*Matter of County of Westchester v Helmer*, 296 AD2d 68 [2002], *lv denied* 99 NY2d 502 [2002]); the factual background of this appeal is described as follows:

"In September 1997, [respondent Consolidated Edison Company of New York, Inc. (hereinafter Con Ed)] and other parties entered into a negotiated settlement (hereinafter the 1997 settlement), later adopted by [respondent Public Service Commission (hereinafter PSC)], which established a multiphase, five-year rate structure aimed at reducing Con Ed's cumulative rates by more than $1 billion while permitting Con Ed the opportunity to recover certain 'strandable costs' it incurred as a result of the transition away from the regulated electricity market. The 1997 settlement also implemented a 'retail access program,' whereby consumers in Con Ed's southern New York service territory would have the option of purchasing energy directly from alternative suppliers, but would continue to receive delivery of the energy through Con Ed's distribution network, regardless of the supplier. Electric rates were separated into two principal components: electrical generation, or commodity, costs and delivery costs. It was contemplated under the same agreement that commodity rates would be subject to an exchange market overseen by the New York Independent System Operator (hereinafter NYISO). The 1997 settlement expressly provided that delivery rates would be uniform throughout Con Ed's service area, but expressly left open the question of whether the citizens of [the] County of Westchester would be subject to a different delivery rate once the NYISO became fully operational.

"Thereafter, in anticipation of the expected start-up of the NYISO, Con Ed filed an implementation plan and rate structure for phase three of its retail access program. Following extensive public comment, the PSC ultimately issued orders dated February 28, 2000 and April 13, 2000. The orders allowed Con Ed to recoup its market costs for energy by imposing a Market Supply Charge (hereinafter MSC) upon its full-service customers only. In contrast, all of Con Ed's ratepayers, whether full-service or delivery only, could be subject to a Monthly Adjustment Clause charge (hereinafter MAC) aimed at passing on Con Ed's strandable costs to the consumer. Under this MSC/MAC system, New York City and Westchester County consumers pay uniform MSC

rates because the MSC is tied to full-service rates that are essentially equal. However, as relevant here, the PSC specifically authorized the MAC to be higher in Westchester County than in New York City, resulting in higher delivery rates for Westchester County customers. The higher delivery rates reportedly act to offset the higher energy supply costs experienced in New York City. Because of the delivery rate disparity, Westchester County estimates that its residents inequitably shoulder 62% of the MAC, as opposed to the 38% paid by New York City customers, even though New York City residents consume 88% of Con Ed's electric energy. In light of Westchester County's objections thereto, the PSC agreed to address the issue of disparate delivery rates in a separate proceeding or in subsequent discussions related to Con Ed's restructuring and rate plan" (*id.* at 69-70 [citation omitted]).

The PSC, as agreed and as we anticipated, proceeded to study the merits of unequal MAC charges between New York City consumers and the Westchester County consumers and, in 2003, it determined to move towards equalization of the MAC over a three-year period. Equalization was estimated to increase the electric rate to New York City customers by 1.2% and decrease the rate to Westchester County customers by 8%. This time, New York City objected and, subsequent to the denial of its petition for rehearing, it commenced this CPLR article 78 proceeding seeking annulment of the PSC determination to equalize the MAC charges. Supreme Court granted the petition, annulled the determination and remitted the matter to the PSC. Westchester County, its Executive and the members of its Board of Legislators—all of whom intervened in this proceeding—and the PSC appeal from this judgment.

While Supreme Court recognized the well-settled rule that a PSC rate determination is entitled to judicial deference and will not be disturbed unless such determination is found to lack a rational basis or reasonable support in the record (*see Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 95 NY2d 40, 48 [2000]; *Matter of Concord Assoc. v Public Serv. Commn. of State of N.Y.*, 301 AD2d 828, 830 [2003]), it concluded that the PSC's decision to fix Con Ed's electrical rates for New York City and Westchester County without recognizing the difference in MAC charges to the discrete geographical regions was without a rational basis and constituted an unwarranted, unsupportable departure from its previously declared policy of equalizing electric rates for customers in the same service classification.

We previously declared the PSC's decision to temporarily

maintain equal full service rates in both New York City and Westchester County by authorizing disparate delivery rates within New York City and Westchester County to be rationally based (*see Matter of County of Westchester v Helmer*, 296 AD2d 68, 72-73 [2002], *supra*). In reaching this conclusion, we concurred with the PSC's formulation of a step-by-step approach to achieving a totally competitive market for electricity (*see Matter of New York State Council of Retail Merchants v Public Serv. Commn. of State of N.Y.*, 45 NY2d 661, 670 [1978]; *Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.*, 117 AD2d 156, 160 [1986]). The PSC determination under present consideration represents the next logical step in the process of deregulation and is based upon the acquisition and consideration of additional information which has become available since our last decision. The PSC considered the equalization of the MAC charges within the two geographic service areas to be the most feasible and economically efficient method to "further economic efficiency goals by reflecting any substantial differences that exist in wholesale costs between Westchester [County] and New York City." In other words, although equalization would have the effect of slightly raising prices in New York City, at least the prices would accurately reflect the market, which would signal to the consumer the higher costs of energy in the area, which may, in turn, encourage demand reductions. Thus, the PSC concluded that "the best way to continue the work begun in 1996 to implement competitive opportunities in the electric industry is to permit the NYISO wholesale commodity prices to be directly reflected in full-service customer bills, by gradually moving to a regime of equal MAC charges for all customers." Accordingly, we conclude that the PSC determination is rational and amply supported by the evidence in the record.

Turning to petitioner's contentions to affirm annulment of the PSC determination, we first find no merit to its claim that deviation from the PSC's long-standing policy of imposing uniform rates within one utility's service area renders the determination irrational (*see Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 95 NY2d 40, 48-49 [2000], *supra*). Here, the PSC determination has a rational basis since by equalizing the MAC charges, the higher commodity prices in New York City would be accurately reflected in consumer bills and would encourage customers to seek out the most cost efficient source of electricity. Next, we reject petitioner's contention that by equalizing MAC charges, the PSC arbitrarily refused to recognize the difference between the stranded costs in the two geographic service areas. Although the PSC is free to ignore any

disparity in stranded costs (*see Matter of Abrams v Public Serv. Commn. of State of N.Y.*, 67 NY2d 205, 212 [1986]), in reaching its decision, it did address and reject this argument, concluding that these stranded costs should be shared equally since they are associated with costs incurred by Con Ed prior to deregulation, for the benefit of all of its customers and are not assignable on the basis of geographic location. Moreover, given the erosion of the impact of stranded costs on electrical rates over time, a continuation of unequal MAC charges would largely eliminate, for Westchester County residents, the benefits associated with deregulation of the industry.

Next, we reject petitioner's contention that the PSC should have considered possible differing costs associated with transmission and distribution of electricity within the two discrete geographical areas. Relying upon a study conducted in 1982, the PSC determined that any variance in transmission and distribution costs was insignificant since it was within the statistical tolerance band of the study. In this regard, the PSC was entitled to, and did, permissively draw upon its own experience and expertise in resolving this highly technical issue (*see Matter of MCI Telecom. Corp. v Public Serv. Commn. of State of N.Y.*, 231 AD2d 284, 292 [1997]).

Finally, petitioner contends that it was arbitrary and capricious for the PSC to deaverage prices only within Con Ed's service area when other utilities had varying commodity costs within their territories. Initially, as petitioner never presented evidence supporting this argument during the administrative proceedings, it should not have been considered by Supreme Court (*see Matter of Kelly v Safir*, 96 NY2d 32, 39 [2001]). In any event, the PSC had a rational basis to discriminate between Con Ed's service area and other utility companies' service areas because, as it found, "the largest part of the cost difference between Westchester [County] and [New York] City (about 75%) is related to the cost of installed capacity . . . . At present, no other [state] regulated utility serves a franchise area that covers more than one [installed capacity] market. Thus the commodity cost difference for [Con Ed] is, by far, the largest such spread within a single utility company throughout the [s]tate."

In view of the foregoing, we conclude that Supreme Court improperly annulled the PSC's determination to equalize the MAC charges and, accordingly, reverse and dismiss the petition.

Mercure, J.P., Peters, Carpinello and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and petition dismissed.